Close v. Close.

CLOSE vs. CLOSE.

In fixing a yearly sum for alimony, after final decree for divorce from
bed and board, the large and valuable real estate of the husband ought not
to be regarded as an ordinary farm, in judging of his faculties. The de-
fendant should be called on to change the character of the property in
which his wealth is invested, if such change is requisite, to make suitable
provision for his wife, driven, by his extreme cruelty, from his house.

*Mr. C. Parker*, for complainant.

*Mr. C. H. Winfield*, for defendant.

THE VICE-CHANCELLOR.

The complainant having obtained a decree of divorce against her husband, from bed and board, on the ground of his extreme cruelty, it was referred to me to advise what order should be made touching the custody of the infant children and alimony. The proofs, prior to the decree, were directed to be considered by me, as well as other proofs to be taken. The parties themselves, and the witnesses produced by them, have been examined before me, and testimony has also been taken out of the state by commission.

The parties were married in 1846. The bill of complaint was filed in October, 1870. A few weeks prior to that date the complainant was compelled to leave her husband's house, with an infant child about four months old. She was the mother, by him, of nine children, then living, of whom the eldest, a daughter, was about twenty-three years old. The complainant had no estate of her own. Her husband was possessed of a large property, and, for about ten years, had been living in Bayonne, near to Jersey City. He was a retired man of business. The larger part of his property consisted of the tract of land on which they were living, being about forty acres, and so situated as to be capable of division into building lots. It had risen greatly in value since it was purchased, and is shown by the proofs to be worth now, at a low valuation, the sum of $150,000. It is shown by the proofs to be saleable in larger or smaller parcels, for good prices, if the owner were willing to sell. Besides this property, the defendant is possessed of an interest in a cemetery, in the city of Washington, from which he derives an income, yearly, of several thousand dollars. I think, from the evidence, that his yearly income from this source may be put at $4000, at the least.

An order was made by Chancellor Zabriskie, a few months after the filing of the bill, and after testimony and argument, by which the defendant was directed to pay to the complainant, for alimony *pendente lite*, the sum of $25 per week. The defendant has neglected to pay this weekly sum since March 4th, 1874. The final decree of divorce was obtained in July, 1874. It appears, I think, quite clearly, from the evidence, that the defendant is so managing his property—allowing it to become so circumstanced as to enable him to offer plausible objections to the payment of anything for alimony. The only difficulty I have had in fixing upon a sum for permanent alimony, grows out of the condition and character of his estate. But I am satisfied that the situation in which he has brought it, or designedly suffered it to be, cannot be allowed to defeat the manifest justice of the case, in respect to the complainant and the children, whose custody should be given her. In judging of his faculties, his large and saleable real estate ought not to be regarded as an ordinary farm. I think it plainly a case where the defendant should be called on to change the character of the property in which his wealth is, to a great extent, invested. If he were to do so, his income would be adequate to a very liberal provision for himself and the complainant and the minor children, however the custody of the latter might be apportioned. In this view, and having regard to the facts of this case, as disclosed by the evidence, I shall advise that the complainant be decreed to have the custody of two of the children, in addition to the youngest child now in her charge. The two children, whose welfare calls strongly, in my judgment, for the society and care of their mother, are the younger daughters, Annie and Eva, aged, respectively, about twelve and ten years. There is no need of referring specially to the evidence to exhibit the probable influence upon these children, of their father's temper and habits. There can be no doubt that such influence would be highly unfavorable.

As permanent alimony for the mother and for the children I advise the yearly sum of $3000, payable monthly. This

Close *v.* Close.

sum is to cover all her and their expenses, and to provide for their nurture and education, as long as the order directing it shall be in force. I think the mother, being expelled from her husband's house, where her other children still are, should be so provided for that, by economy suited to her husband's means, she may receive visits from all her children, and that she ought not to be limited to an allowance that would prohibit her from a reasonable enjoyment of their society. Looking to all the facts of the case, my judgment is that the above yearly sum is by no means too large. The order should provide, in usual terms, for a modification of the allowances, as future exigencies may arise.

The order will contain, also, the customary provisions in respect to the methods of its enforcement. Should the defendant desire to make sale of any part of his lands, or to raise money by mortgaging them, the willingness of the complainant to execute the conveyances will, of course, be requisite to enable him to carry out such purposes. Should such willingness be wanting, it would furnish ground to ask for a change of the order now advised. In respect to the unpaid weekly sums, since March last, I do not now advise any order adjudging the defendant to be in contempt.